**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INSTITUTE FOR JUSTICE,
901 N. Glebe Road
Suite 900
Arlington, VA 22203

Plaintiff,

v.

U.S. CUSTOMS AND BORDER PROTECTION
1300 Pennsylvania Ave. NW
Washington, DC 20229

Defendant.

Civil Action No. ____________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking immediate processing and release of records improperly withheld by Defendant U.S. Customs and Border Protection ("CBP") from the Treasury Department's Seized Asset and Case Tracking System ("SEACATS") database in response to requests properly made by Plaintiff Institute for Justice ("IJ").

2. For more than a decade, IJ has been studying and documenting the problem of civil forfeiture in the United States. Civil forfeiture is a procedure that allows governments to seize and keep private property belonging to individuals who have not been convicted of a crime. Nearly all states and the federal government maintain civil forfeiture programs. In addition, both the U.S. Department of Justice ("Justice Department") and the U.S. Department of the Treasury ("Treasury Department") operate "equitable sharing" programs that allow state and local law enforcement agencies to turn seized property over to federal agents for forfeiture under federal law; the state and local agencies can then receive up to 80 percent of any resulting forfeiture proceeds.

3. On March 3, 2015, IJ submitted a FOIA request to CBP seeking records from the SEACATS database to be used in IJ's civil forfeiture research. IJ seeks the requested records in order to shed light on the Treasury Department's asset forfeiture program, under which approximately $4.6 billion in assets were forfeited in 2015.[1] CBP denied the request as overbroad and insufficiently specific.

---

[1] Office of Inspector Gen., OIG-16-033, Audit of the Dep't of the Treasury Forfeiture Fund's Fiscal Years 2015 & 2014 Financial Statements 50 (2016).

4. On August 5, 2016, IJ filed an administrative appeal of CBP's refusal to release records. CBP denied this administrative appeal on September 23, 2016, asserting that (1) the FOIA request was overbroad and would require CBP to devote excessive time to reviewing the requested records for production; and (2) the SEACATS database is categorically exempt from disclosure under Exemption 7(E) concerning law enforcement techniques or procedures. IJ's FOIA request to CBP is not overbroad. The request is directed to asset forfeiture data housed in a discrete, identified database known as SEACATS. Preparing the database for production would in no way require CBP to examine every record, but would simply involve reviewing the database's tables and columns to determine if any should be excluded based upon valid exemptions. Indeed, in May 2014, the Justice Department complied with a similar IJ FOIA request and produced the majority of a parallel database containing asset forfeiture data maintained by the Justice Department – the Consolidated Asset Tracking System ("CATS") database. The Justice Department was able to complete the production within three months of IJ's request and without charge to IJ.

5. The Justice Department is not the only federal agency that has provided forfeiture data to IJ. So, too, has the Internal Revenue Service ("IRS"). In March 2014, the IRS provided to IJ portions of its forfeiture database. This was in response to a November 2013 request by IJ. The IRS provided 10 years of forfeiture data related to civil and criminal structuring investigations. Moreover, these data were provided in electronic format (i.e., a spreadsheet) on a CD. Thus, claiming the entire SEACATS database is exempt is inconsistent with the fact that another Treasury agency has, in fact, provided data from its own forfeiture database.

6. CBP also claims that the entire SEACATS database is categorically exempt from disclosure under FOIA pursuant to Exemption 7(E). This objection is implausible and improper.

The SEACATS database contains, among other things, data on the types and values of assets seized under the Treasury Department's asset forfeiture program; dates of the seizures; the laws under which the seizures occurred; and information concerning sharing of seizure proceeds between federal, state, and local law enforcement. There is no legal basis for CBP's assertion that these data constitute law enforcement "techniques or procedures" exempt from FOIA disclosure. The Justice Department did not assert such a blanket objection with respect to IJ's request for the CATS database, but instead identified and redacted certain columns of data from the database based upon particular exemptions. CBP must similarly produce the SEACATS database, redacting only those columns that are subject to valid exemptions.

7. CBP's refusal to produce the SEACATS database violates the FOIA and impedes IJ's efforts to study and document for the public the nature of the Treasury Department's asset forfeiture program.

## JURISDICTION AND VENUE

8. This is an action arising under federal law – the FOIA, 5 U.S.C. § 552. Accordingly, this Court has subject matter jurisdiction over this action and personal jurisdiction over the parties under 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 552(a)(4)(B) (district court for District of Columbia has jurisdiction to resolve FOIA complaints).

9. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B).

10. IJ has exhausted all administrative remedies in connection with this FOIA request.

## PARTIES

11. Plaintiff IJ is a charitable 501(c)(3) corporation duly organized and existing under the laws of the District of Columbia with principal offices at 901 N. Glebe Road, Suite 900, Arlington, Virginia 22203.

12. IJ was founded in September 1991 as a non-partisan, non-profit, public interest law firm that has as its goal limiting the size and scope of government power to ensure that all Americans have the right to control their own destinies as free and responsible members of society.

13. With offices in the states of Virginia, Arizona, Florida, Illinois, Minnesota, Texas and Washington, IJ litigates in federal and state courts across the country. IJ also conducts and publishes strategic research and studies about laws and policies, and works extensively in the court of public opinion with a wide variety of publications and articles in the news media.

14. IJ has produced 11 original research studies documenting the problem of civil forfeiture—most notably two editions of a comprehensive nationwide study, titled *Policing for Profit,* which evaluated the forfeiture laws of all 50 states, the District of Columbia, and the federal government, as well as analyzed forfeiture data obtained from more than 200 state and federal public records requests. IJ's studies have relied on such public records to document forfeiture practices by the Justice Department, the IRS, and multiple states. These studies have received extensive media coverage, including more than 300 press mentions for the second edition of *Policing for Profit* alone, and state and federal legislators have pointed to IJ's research to call for forfeiture reforms. Attorneys at IJ have represented property owners defending against civil forfeiture actions and challenging the constitutionality of civil forfeiture procedures. IJ has made combatting civil forfeiture a top priority in its work to restore constitutional protections for private property rights.

15. CBP is an agency of the federal government of the United States located in Washington, D.C. CBP operates the SEACATS database to track assets seized under the Treasury Department's asset forfeiture program. CBP has possession of and control over the data that IJ seeks.

## BACKGROUND ON CIVIL FORFEITURE

16. Civil forfeiture is the power of law enforcement to seize and keep property that is merely suspected of being connected with criminal activity. Unlike criminal forfeiture, law enforcement can seize cash, cars, homes, or other property without charging or convicting the owner of a crime.

17. Before the late 20th century, the use of civil forfeiture was largely limited to the seizure of goods in the contexts of admiralty, piracy, and customs enforcement, with brief expansions of use during the Civil War and Prohibition.[2]

18. In 1984, however, Congress amended the Comprehensive Crime Control Act to create the Justice Department's Assets Forfeiture Fund and the Customs Forfeiture Fund, which allowed federal agencies to use the funds from seized assets to finance agency expenditures, everything from vehicle purchases to overtime pay.[3] In 1992, Congress authorized the creation of the Treasury Forfeiture Fund to supersede the Customs Forfeiture Fund.[4] Property seized under these programs has included businesses, cash, bank accounts, automobiles, boats, airplanes, jewelry, art objects, and real estate.[5] Legislation also authorized the Justice Department and Treasury Department to share forfeiture funds with over 3,000 state and local law enforcement agencies.[6]

19. In recent years, civil forfeiture activity has greatly increased. The Justice Department's Assets Forfeiture Fund and the Treasury Forfeiture Fund have seen combined

---

[2] Dick M. Carpenter II, Ph.D. et al., POLICING FOR PROFIT 10 (2d ed. 2015).
[3] Gov't Accounting Office, GAO/T-GGD-96-40, Report to Permanent Subcommittee on Investigations, Comm. on Governmental Affairs, U.S. Senate, Asset Forfeiture: Historical Perspective on Asset Forfeiture Issues 2-3 (1996).
[4] *Id.* at 5.
[5] *Id.* at 2.
[6] *Id.* at 5.

***annual*** deposits reach more than $6 billion.[7] Total deposits to both funds from the fiscal years of 2001 to 2015 have added up to $35 billion, of which a third are deposits to the Treasury Fund.[8] Between 2001 and 2014, annual deposits to these funds grew more than 1,000%.[9] For the Treasury Fund alone, deposits have risen from $65 million in 2001 to $4.6 billion in 2015.[10]

20. Treasury Department law enforcement agencies — including CBP, Immigration and Customs Enforcement, the Criminal Investigation Division of the Internal Revenue Service, and the U.S. Secret Service — participate in the Treasury Forfeiture Fund.[11] These agencies use the SEACATS database as the primary automated system for seized asset tracking and management.[12] SEACATS allows the agencies to track information on assets through their entire life cycle, from seizure to disposition.[13]

---

[7] OIG-16-033, Audit of the Dep't of the Treasury Forfeiture Fund's Fiscal Years 2015 & 2014 Financial Statements at 50; Office of the Inspector Gen., Audit Division 16-04, Audit of the Assets Forfeiture Fund & Seized Asset Deposit Fund Annual Financial Statements Fiscal Year 2015, 8 (2016).

[8] POLICING FOR PROFIT at 148; OIG-16-033 at 50; Audit Division 16-04 at 8.

[9] POLICING FOR PROFIT at 10.

[10] POLICING FOR PROFIT at 10; OIG-16-033 at 50.

[11] OIG-16-033 at 27.

[12] GAO/T-GGD-96-40, Asset Forfeiture: Historical Perspective on Asset Forfeiture Issues at 3.

[13] Gov't Accountability Office, GAO-12-972, Report to the Ranking Member, Comm. on the Judiciary, U.S. Senate, Asset Forfeiture Programs: Justice & Treasury Should Determine Costs & Benefits of Potential Consolidation 12 ( 2012).

**PROCEDURAL HISTORY**

21. On March 3, 2015, IJ's Senior Research Analyst Angela C. Erickson submitted a FOIA request to CBP for all records contained in the Treasury Department's SEACATS database from 2000 to the present. The request sought three categories of information: (1) the entire SEACATS database in an electronic format, such as a database "dump" or comma-separated value files; (2) the complete database schema and/or database model describing the tables; and (3) any database reports, stored procedures, or queries used to create aggregate information, such as an annual report. A copy of this resquest is attached hereto as Exhibit A.

22. On May 10, 2016, more than a year after the FOIA request, CBP issued a response stating that the request was "too broad in scope or did not specifically identify the records which you are seeking." The response stated that it was not a denial of the FOIA request. A copy of this response is attached hereto as Exhibit B.

23. On July 5, 2016, Ms. Erickson sent a letter perfecting the request. The letter identified descriptions of the SEACATS database in Government Accountability Office ("GAO") reports and in CBP handbooks, identified employees at CBP who were likely working on the SEACATS database, and noted that the Justice Department had already produced the equivalent CATS database to IJ. A copy of this letter is attached hereto as Exhibit C.

24. Between July 7, 2016, and August 2, 2016, Ms. Erickson and CBP communicated multiple times about the FOIA request. On August 2, 2016, CBP sent Ms. Erickson a denial letter, stating that the FOIA request was "too broad in scope or did not specifically identify the records which you are seeking." A copy of this denial letter is attached hereto as Exhibit D.

25. By letter dated August 5, 2016, IJ submitted an administrative appeal of CBP's denial of the FOIA request, stating that the request was neither overbroad nor insufficiently specific. IJ explained that the request was sufficiently specific because it clearly identified the

SEACATS database in a manner that allowed CBP "to determine 'precisely what records [were] being requested.'" A copy of this appeal is attached hereto as Exhibit E.

26. By letter dated September 23, 2016, CBP denied IJ's administrative appeal on two primary grounds: First, CBP maintained that IJ's FOIA request was overbroad because it would purportedly "take, at a minimum, 96 years" for CBP to process the approximately four million records in the SEACATS database in advance of production. Second, CBP argued that the entire SEACATS database is categorically exempt from disclosure under Exemption (7)(E), because the SEACATS database is allegedly a law enforcement "technique and procedure," the disclosure of which would risk circumvention of the law. The denial letter also stated that the SEACATS records would implicate Exemptions 2-7 under FOIA, but provided no details beyond a boilerplate recitation of these exemptions. A copy of this denial letter is attached hereto as Exhibit F.

27. IJ has therefore exhausted its administrative remedies under FOIA. *See* 5 U.S.C. § 552(a)(6)(C)(i).

**IJ'S FOIA REQUEST IS NOT OVERBROAD**

28. IJ's FOIA request seeks all records contained in the SEACATS database maintained by CBP, along with the database schema and/or database model describing the tables, and any database reports, stored procedures, or queries used to create aggregate information, such as an annual report. This request is neither overbroad nor insufficiently specific.

29. In its September 23, 2016 denial of IJ's administrative appeal, CBP concluded that IJ's request was overbroad because production of the SEACATS database would purportedly require CBP to individually review each of the database's approximately four million records. There is no legal or technical basis for this conclusion. On information and belief, SEACATS is a database composed of tables, each with a discrete number of columns and

numerous rows. Preparation of the database for production would in no way require review of each table row, but would simply entail review of the column descriptions to determine if any categories of data were subject to valid exemptions. This Court has been "skeptical that a FOIA request may be denied based on sheer volume of records requested," particularly as FOIA anticipates voluminous requests.[14] Courts "have held that it is reasonable for a FOIA request to ask the government to pull a large number of investigative records from one specific records system . . . ."[15] Here, IJ is seeking records from one identified database – SEACATS.

30. In response to a similar FOIA request by IJ in May 2014, the Justice Department produced nearly the entire CATS database and a *Vaughn* index to IJ within three months of IJ's request. The Justice Department provided the CATS database free of charge on a disc in a comma-delimited electronic format in which each column value was separated by a comma. The Justice Department presumably reviewed the columns of data within the database to identify and redact certain columns subject to particular exemptions. Those redacted columns were then indicated in an index listing all of the database's columns.

31. The CATS database produced by the Justice Department included numerous tables and elements with information about types and values of seized assets that were not subject to any FOIA exemption, including:

- **ASSET_T:** A table containing information such as the case type (e.g., whether the asset was seized under civil or criminal procedures); the date a property was turned over to the federal agency by a local agency in order to be seized under federal forfeiture law; the asset type (e.g. vehicle or cash) and asset subtype (e.g. U.S. currency or foreign

[14] *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 454-455 (D.D.C. 2014); *see also id.* at 455 (citing FOIA Update Vol. IV, No. 3 at 5 to note that the "sheer size [of a request] . . . does not entitle an agency to deny that request on the ground that it does not 'reasonably describe' records within the meaning" of FOIA).
[15] *Pinson v. U.S. Department of Justice*, 70 F. Supp. 3d 111, 120 (D.D.C. 2014); *see Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (affirming rejection of argument that request for "all the records within a particular computer system" was overbroad).

currency); the actual or appraised value of a seized asset; and the date the property was fully disposed.

- **DAG71_T**: A table containing all information about equitable sharing of forfeited assets, including the local or state agency seeking a portion of the forfeiture funds, the total amount available for sharing, and the amount the agency expects to receive.

- **FORFTURE_T**: A table containing information about the final forfeiture of a piece of property, including the amount forfeited in a seizure, whether the forfeiture has been approved, and the date the forfeiture was approved or disapproved.

32. The GAO has stated that the Treasury Forfeiture Fund "essentially mirrors" the Justice Department's Assets Forfeiture Fund.[16] In the 1990s, the Treasury and the Justice Departments had agreed to develop Justice's CATS system together as their primary system for tracking asset forfeiture programs, until Treasury concluded that it needed a separate system to meet federal reporting requirements. Such requirements include the Federal Accounting Standards Advisory Board's Statement of Federal Financial Accounting Standards No. 3 (FASAB No. 3), which requires analysis of the dollar value and number of seized properties that are (1) on hand at the beginning of the year, (2) seized during the year, (3) disposed of during the year, and (4) on hand at the end of the year.[17] On information and belief, the SEACATS database will contain tables and elements equivalent to those in the CATS database produced by the Justice Department, and which are not subject to any FOIA exemption.

**EXEMPTION 7(E) DOES NOT EXEMPT THE ENTIRE SEACATS DATABASE FROM DISCLOSURE**

33. In its September 23, 2016 denial of IJ's administrative appeal, CBP erred in applying Exemption (b)(7)(E) ("Exemption 7(E)") to withhold the SEACATS database in its entirety from disclosure. Exemption 7(E) applies to information relating to law enforcement "techniques or procedures," or "guidelines" (i.e. "an indication or outline of future policy or

[16] GAO/T-GGD-96-40, Asset Forfeiture: Historical Perspective on Asset Forfeiture Issues at 9.
[17] *Id.*

conduct") for law enforcement investigations.[18] Exemption 7(E) does not apply to statistical data that are "neither 'techniques or procedures' nor 'guidelines.'"[19]

34. Exemption 7(E) does not apply to exempt the entire SEACATS database because the data contained in the database are not a law enforcement technique, procedure, or guideline. For instance, information about the values and types of seized assets is not a law enforcement technique, procedure, or guideline. The GAO, for example, has published many reports to the U.S. Congress about the Justice Department's and Treasury Department's asset forfeiture programs, highlighting complex issues with the management of seized cash, cars, boats, airplanes, and real estate.[20] The existence of seized assets such as vehicles, and the statistical data on their value, does not reveal any non-public information about law enforcement methods or about outlines of future policy for law enforcement investigations.

35. On information and belief, the SEACATS database contains equivalent tables and elements as those in the CATS database that were released to IJ by the Justice Department. Such tables and elements—for example, the type of seized asset, date of seizure, value of seized asset, and equitable sharing between federal and local agencies—do not disclose techniques or procedures for law enforcement investigations or prosecutions, or guidelines that risk circumvention of the law. The Justice Department's release of equivalent tables and elements

---

[18] *Allard K. Lowenstein Intern. Human Rights Project v. Department of Homeland Sec.,* 626 F.3d 678, 682 (2d Cir. 2010) (quoting *Webster's Third New Int'l Dictionary* (1986)).
[19] *Families for Freedom v. U.S. Customs and Border Protection,* 797 F. Supp. 2d 375, 391 (S.D.N.Y. 2011) (arrest "statistics are neither 'techniques or procedures' nor 'guidelines,' such that they could be properly exempt under 7(E)"); *Families for Freedom v. U.S. Customs and Border Protection,* 837 F. Supp. 2d 287, 297-298 (S.D.N.Y. 2011) (finding that responsive data on CBP arrest statistics, broken down by type of inspection and nationality of arrestee, should be released under FOIA).
[20] *See e.g.,* GAO/T-GGD-96-40, Asset Forfeiture: Historical Perspective on Asset Forfeiture Issues at 5; *see also*, GAO-12-972, Asset Forfeiture Programs: Justice & Treasury Should Determine Costs & Benefits of Potential Consolidation.

from its CATS database indicates that similar information from the SEACATS database should be released under FOIA.

36. CBP has also improperly withheld information responsive to IJ's request for any database reports, stored procedures, or queries used to create aggregate information, such as an annual report. According to the GAO, CBP developed the SEACATS database to comply with federal reporting requirements on the dollar value and number of seized properties that are on hand or disposed.[21] The existence of these federal reporting requirements indicates that CBP has generated database reports that should be released.

## CBP HAS FAILED TO PROPERLY RAISE OTHER FOIA EXEMPTIONS

37. In its September 23, 2016 denial of the administrative appeal, the CBP provided only a boilerplate recitation of other exemptions (Exemptions 2-7) that it alleges apply to records in the SEACATS database. Such boilerplate language is insufficient to raise substantive reasons to deny IJ's FOIA request.

## CLAIMS FOR RELIEF

### COUNT I

### FAILURE TO PRODUCE RECORDS

38. Plaintiff IJ repeats the allegations set forth in paragraphs 1-37 above as if stated fully herein.

39. Pursuant to FOIA, IJ properly requested that Defendant CBP produce all records from the SEACATS database. These records will be used in connection with IJ's research regarding civil forfeiture in the U.S.

40. The requested SEACATS database is in the possession, custody, and control of CBP.

41. CBP withheld the requested SEACATS database based on the improper objection that IJ's request was overbroad and insufficiently specific. IJ's request was not overbroad or insufficiently specific. IJ seeks information from a known database in CBP's possession – the SEACATS database. It would not require excessive time for CBP to review the database prior to production, as CBP need not review every database record, but can simply review the descriptions of the database's tables and columns to determine if any contain data exempt from disclosure. The Justice Department was able to complete a comparable review of the CATS database in three months and, to the extent that the CATS and SEACATS databases are similar, the Justice Department's production and *Vaughn* index could provide a starting point for CBP.

42. CBP also improperly invoked FOIA Exemption 7(E) to withhold the entire SEACATS database from production. CBP has no legal basis for withholding the entirety of the SEACATS database under Exemption 7(E), because the data therein are not a law enforcement technique, procedure, or guideline subject to Exemption 7(E).

43. Accordingly, CBP violated its duty under FOIA to produce the SEACATS database in response to IJ's FOIA request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff IJ respectfully requests that this Court:

A) Declare that CBP's failure to disclose the records requested by IJ is unlawful under FOIA;

B) Order CBP to provide the SEACATS database and other data and documents specified in IJ's FOIA request promptly, and to make the requested records available to IJ without charge;

[21] GAO/T-GGD-96-40 at 9.

C) Award IJ its costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

D) Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,

MORRISON & FOERSTER LLP

*/s/ G. Brian Busey*

G. Brian Busey (D.C. Bar No. 366760)
Daniel P. Muino (D.C. Bar No. 1020942)
Michelle Yang (D.C. Bar No. 1005035)
2000 Pennsylvania Avenue, N.W., Suite 6000
Washington, D.C. 20006
Tel.: 202.887.1501

*Counsel for Plaintiff Institute for Justice*

Dated: December 8, 2016